# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS & ST. JOHN

| | |
|---|---|
| THE MORAVIAN CHURCH VIRGIN ISLANDS CONFERENCE a/k/a MORAVIAN CHURCH CONFERENCE OF THE VIRGIN ISLANDS,<br><br>Plaintiff,<br><br>vs.<br><br>THE SUMMERS END GROUP, LLC,<br><br>Defendant<br><br>and<br><br>GOVERNMENT OF THE VIRGIN ISLANDS,<br><br>Nominal Defendant. | Civil No. 2022-CV-00062<br><br>ACTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND DECLARATORY RELIEF |

## COMPLAINT

Plaintiff The Moravian Church Virgin Islands Conference (a/k/a Moravian Church Conference of the Virgin Islands) ("Plaintiff" or "Moravian Church"), by and through undersigned counsel, seeks a temporary restraining order, preliminary injunction, permanent injunction, and declaratory relief against Defendant The Summers End Group, LLC ("Defendant" or "SEG").[1]

## Jurisdiction

1. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1331 as this case arises under the Constitution and laws of the United States.

---

[1] Plaintiff does not seek relief from Nominal Defendant Government of the Virgin Islands ("Nominal Defendant" or "GVI"). GVI is included only as a nominal defendant as the instant action challenges the Constitutionality of a Legislative Act.

2. Plaintiff is an owner of real property adjacent to Coral Bay Harbor ("Coral Bay") in St. John, U.S. Virgin Islands, who has been attempting to apply for and obtain a permit to construct a marina in Coral Bay for many years.

3. SEG has also been in the process of obtaining a permit to construct a marina in Coral Bay for years.

4. SEG's proposed marina is substantially larger than Plaintiff's proposed marina and, if constructed as proposed, SEG's proposed marina would effectively prevent the development and/or viability of Plaintiff's proposed marina by consuming virtually all navigable water in Coral Bay in which Plaintiff's proposed marina would be constructed and/or exhausting the market for marina services in Coral Bay.

5. The alleged permit in this case is the product of an enactment by the Government of the Virgin Islands that the V.I. Supreme Court ruled only applies to and benefits SEG and instantly rendered moot pending litigation against SEG and the Government of the Virgin Islands regarding the legality of SEG's permit under the CZM Act.

6. This enactment, as interpreted by the V.I. Supreme Court, violates Plaintiff's rights to due process and equal protection; abridges Plaintiff's right to petition the government for the redress of grievances; violates the separation of powers under the Constitution and the Revised Organic Act; and is a violation of the Public Trust Doctrine under 48 U.S.C. § 1705.

**SEG Permit Application Process Under 12 V.I.C. §§ 910, *et seq*.**

7. On April 14, 2014, pursuant to 12 V.I.C. § 910(a)(1)-(2), SEG applied for Coastal Zone Management ("CZM") land permit to construct a new commercial marina on land adjacent to Coral Bay (the "Land Application").

8. SEG also applied, pursuant to 12 V.I.C. § 910(a)(1)-(2), for a CZM water permit to develop 27.5 acres of submerged land in Coral Bay to construct a 145-slip marina, a 75-vessel mooring field, a pump out station, and a fuel station seaward of the land parcels (the "Water Application").

9. The submerged lands of the Virgin Islands, including the 27.5 acres of submerged land that was the subject of SEG's water permit application, is owned by the Government of the Virgin Islands but must "be administered in trust of the benefit of the people [of the Virgin Islands]."

10. CZM declared SEG's permit applications complete on June 18, 2014, pursuant to 12 V.I.C. § 910(d)(1).

11. On August 20, 2014, CZM conducted public hearings on both of SEG's permit applications, pursuant to 12 V.I.C. § 910(d)(2), at which Plaintiff's representative spoke in opposition to both applications.

12. On October 24, 2014, CZM recommended both applications for approval, pursuant to 12 V.I.C. § 910(a)(2) ("CZM's Decision").

13. On November 24, 2014, within forty-five days of CZM's Decision, Plaintiff filed a timely appeal of CZM's decision recommending both permits for approval with the Board of Land Use Appeals ("BLUA"), pursuant to 12 V.I.C. §§ 910(d)(5) and 914(a).

14. Pursuant to 12 V.I.C. § 910(d)(5), as a timely appeal was filed with BLUA regarding both permits applications, the operation and effect of CZM's action was stayed pending a decision on appeal.

15. On June 6, 2016, BLUA approved both decisions by CZM, but remanded the permit applications to CZM to consolidate the two permits into one permit ("BLUA's Decision").

16. Though BLUA ostensibly acted pursuant to 12 V.I.C. § 914(d), it is not clear that the BLUA had statutory authority to approve the permit applications and simultaneously remand the matter to CZM to have the permits consolidated into a single permit as the code states explicitly the BLUA may either affirm or reverse CZM's action and either approve or deny an application for a CZM permit.

17. Regardless, pursuant to 12 V.I.C. § 914(d), BLUA's action became final after four working days following BLUA's Decision.

18. As Plaintiff's administrative remedies had been exhausted, on July 16, 2016, within forty-five days of BLUA's Decision, Plaintiff filed a timely petition for writ of review of CZM's Decision and BLUA's Decision with the Superior Court, pursuant to 12 V.I.C. § 913(d).

19. After BLUA's Decision and while Plaintiff's petition for writ of appeal was pending, CZM had not consolidated the permits as directed in BLUA's Decision.

20. Nor had CZM or BLUA forwarded any permits to the Governor for approval as required by 12 V.I.C. § 911(e).

21. On March 27, 2019, CZM's Chair unilaterally forwarded the water permit to the Governor for approval, ostensibly pursuant to 12 V.I.C. § 911(e).

22. It must be emphasized that BLUA had not approved a standalone water permit but rather approved the permit applications subject to the two permit applications being consolidated by CZM, which had not yet occurred.

23. Regardless, the Governor approved the standalone water permit and forwarded it to the Legislature for approval, pursuant to 12 V.I.C. § 911(e).

24. The Legislature held a hearing on the matter on October 28, 2019, at which time Plaintiff's representative pointed out that BLUA's Decision had not approved a standalone water permit but rather a consolidated permit such that the purported permit application was not properly before the Legislature, and the Senators in attendance appeared to concede the point during the hearing.

25. While the Legislature was considering the matter, SEG sent a letter to the Governor on December 3, 2019, noting that BLUA's Decision had directed CZM to consolidate the two permits and asked the Governor to modify the water permit CZM had submitted to incorporate the land permit and create a consolidated permit.

26. Meanwhile, on December 10, 2019, the Legislature rejected the water permit the CZM Chair had sent unilaterally, returning it to the Governor, noting the application was not properly before the Legislature.

27. On December 16, 2019, CZM issued SEG a consolidated permit ("CZM's 2019 Decision"), which stated it was issued "in accordance with Virgin Islands Code, Title 12, Section 914 and any other provisions of THE CZM Act." (Emphasis in original.)

28. Though CZM's 2019 Decision purported to consolidate the two permits, it still listed both the land permit and water permit, incorporated by reference both previous and separate permit applications, and still identified the "consolidated" permit application by simply listing the same two permit application numbers: CZJ-04-14(W) and CZJ-03-14(L) (the "Consolidated Permit").

29. In any event, pursuant to 12 V.I.C. § 910(d)(5), CZM's 2019 Decision would not become final for forty-five days.

30. However, it was immediately forwarded to the Governor before it had become final.

31. Meanwhile, on January 30, 2019, within forty-five days of CZM's 2019 Decision, an appeal was filed with the BLUA, staying the effect of the Consolidated Permit.

32. The Governor, in response to SEG's December 3, 2019 letter, in which SEG requested that the Governor modify the water permit previously submitted to the Legislature to consolidate both permit applications, issued a letter to SEG on December 18, 2019 modifying what the Governor described in the letter as "Consolidated Major Coastal Zone Management Permit Nos. CZJ-04-14(W) & CZJ-04-14(L)." (the "Modification Letter")

33. The Governor's Modification Letter stated explicitly that it was issued pursuant to "the authority granted to [the Governor] by Title 12, Section 911, Subsection (g) of the Virgin Islands Code."

34. Simultaneously, on the same day – December 18, 2019, the Governor submitted a letter to the Legislature indicating his approval of "the Permits", which he indicated was submitted "in accordance with the provisions of Title 12, Section 911, Subsection (e) of the Virgin Islands Code" and subject to the Modification Letter "approved by [the Governor] pursuant to Title 12, Section 911, Subsection (g) of the Virgin Islands Code" and BLUA's Decision (the Governor's "Second Referral Letter").

35. The Second Referral Letter explicitly sought "[t]he Legislature's expedited and favorable consideration of the Consolidated Major [CZM] Permit No. CZJ-04-14(W) & CZJ-04-13(L) and Modification," which clearly referred to the Legislature's statutory role in ratifying a permit application approved by the Governor, pursuant to 12 V.I.C. § 911(e).

36. At this point, SEG was awaiting the Legislature's action, pursuant to 12 V.I.C. § 911(e), ratifying the Governor's approval of the permit application.

37. On October 14, 2020, Bill 33-0428 was proposed by the Legislature, a copy of which is attached hereto as Exhibit A, which stated explicitly that it was generated "[p]ursuant to 12 V.I.C. § 911(e)" to "ratif[y] the Governor's approval of the Consolidation of Major Coastal Zone Permit No. CZJ-04-14(W) and the [Modification Letter]."

38. It was passed by the Legislature on December 11, 2020, including the identical language quoted above clarifying that the Legislature was attempting to fulfill its statutory duty under 12 V.I.C. § 911(e) under the existing permitting process, and it was signed by the Senate President on December 21, 2020 (the "Bill").

39. On December 13, 2020, the Governor signed and approved the Bill, resulting in Act No. 8407 (the "Act" or "Ratification"), a copy of which is attached hereto as Exhibit B, which still included the exact same language quoted above that clarified that the Legislature had been attempting to fulfill its statutory duty under 12 V.I.C. § 911(e) under the existing permitting process.

**Errors In Complying With The Statutory Permitting Process**

40. Though the Governor's Modification Letter cited 12 V.I.C. § 911(g) as authority for modifying the water permit he previously submitted to the Legislature for ratification (and which the Legislature had rejected), 12 V.I.C. § 911(g) only empowers the Governor to modify or revoke a CZM permit that was already in existence, and 12 V.I.C. § 911(e) requires ratification by the Legislature for a permit to exist, which had not occurred as of December 18, 2019.

41. On the contrary, eight days before the Governor's Modification Letter, the Legislature had already rejected the water permit application that the Governor had previously approved and sent to the Legislature for ratification – so there was no approved permit for the Governor to modify or revoke pursuant to 12 V.I.C. § 911(g) and the land permit

42. Likewise, the Second Referral Letter, which sought to forward a consolidated permit that SEG had proposed in its December 3, 2019 letter, exceeded the Governor's statutory authority under 12 V.I.C. § 911(e), because he was not forwarding a permit that CZM had approved but rather a consolidated permit that SEG had sent him directly.

43. In fact, at that time, the effect of CZM's 2019 Decision was stayed pending the resolution of the timely appeal filed with BLUA.

44. This defect was specifically noted and addressed by the Legislature's Legal Counsel in the DRAFTER'S NOTE at the end of the Bill, in which the Legislature's Legal Counsel emphasized that Bill 33-0428 was "not approved for legal sufficiency." *See* Exhibit A, Page 2.

45. In addition to the points raised above and assuming that the permit that was actually submitted to the Legislature by the Governor on December 18, 2019 had been CZM's 2019 Decision rather than the consolidated permit proposed by SEG in its December 3, 2019 letter, the Legislature's Legal Counsel noted that CZM's 2019 Decision had never been ratified by the Legislature and thus there was no existing permit for the Governor to modify pursuant to 12 V.I.C. § 911(g).

46. Most importantly for the instant action, the DRAFTER'S NOTE by the Legislature's Legal Counsel very explicitly noted that:

application had not even been submitted to the Governor by CZM for approval when the Governor submitted them to the Legislature for ratification.

> It is undisputable that there is a dispute between the owners of the land covered by the permits and the applicant for the permit. Litigation abounds in seven lawsuits involving the applicant. The Legislature is foreclosed by the separation of powers from adjudicating which party has paramount interest in and authority to occupy and develop the land. Even more compelling is the impropriety and unconstitutionality of a legislature's adjudication that would divest one individual of the right to occupy his property and vest it in another. The Legislature must defer to the courts to decide the rights of the litigants.
>
> Exhibit A, Page 2.

47. The Legislature's Legal Counsel also referred the reader to Legal Counsel's memorandum "The Ratification of the Consolidated Permit and Modification" dated September 28, 2020 for a more thorough discussion of the issues plaguing the proposed ratification.

48. Notwithstanding the warnings from the Legislature's Legal Counsel, the Bill attempting to ratify the consolidated permit pursuant to 12 V.I.C. § 911(e) was passed by the Legislature and approved by the Governor, resulting in the Ratification.

49. Plaintiff (and other litigants) have pending motion practice in Superior Court litigation challenging the permit, in which Plaintiff (and other litigants) noted the defects in the Governor's and the Legislature's compliance with the statutory permitting process.

## V.I. Supreme Court *Sua Sponte* and *Nunc Pro Tunc* Converts SEG's Statutory Permitting Process into a Completely Distinct Act Directly Granting SEG a Permit Regardless of the Statutory Permitting Process

50. On July 21, 2020, before the Ratification, Save Coral Bay, Inc. ("SCB") filed an action in Superior Court seeking declaratory judgment and injunctive relief to prohibit SEG from conducting any actions pursuant to the Consolidated Permit ("SCB Suit").

51. Thereafter, the Ratification was approved by the Governor on December 13, 2020.

52. On January 18, 2021, SEG filed a motion to dismiss the SCB Suit based upon the Ratification.

53. On May 12, 2021, the Superior Court granted SEG's motion to dismiss, noting that the Ratification rendered SCB's Suit "moot".

54. On appeal before the V.I. Supreme Court, though none of the parties had briefed or argued the point, the V.I. Supreme Court on March 30, 2022, ruled that the Governor and Legislature were not fulfilling their respective statutory duties under 12 V.I.C. § 911(e) but rather by ratifying the Governor's action, the Ratification constituted the Legislature exercising "the power of the Legislature itself to excuse violations of statutory law." *Save Coral Bay v. Bryan*, 2022 V.I. 7, Page 6 ("*SCB v. Bryan*").

55. In fact, the V.I. Supreme Court literally held that the Ratification constituted the Legislature's "repeal or amend[ment]" of any contrary provisions of 12 V.I.C. §§ 910, *et seq*. that had been violated in the process of ratifying the Consolidated Permit. *SCB v. Bryan*, Page 8.

56. This ruling was clearly erroneous as both the Bill and the Act stated explicitly that they were both passed and approved "[p]ursuant to 12 V.I.C. § 911(e)".

57. In other words, the expressly stated intent of both the Legislature and the Governor were to fulfill the statutory roles described in 12 V.I.C. § 911(e) rather than to "repeal or amend" 12 V.I.C. § 911(e) (or any other provision of the CZM Act).

58. As a result, to reach its conclusion, the V.I. Supreme Court had to both ignore the express statement in the Act that it was merely passed and approved "[p]ursuant to 12 V.I.C. § 911(e)" but also imagine into existence an amendment of various portions of 12 V.I.C. §§ 910-914 that carves out special benefits just for SEG.

59. What the V.I. Supreme Court purportedly read into the Act is not a "repeal" or "amendment" of 12 V.I.C. §§ 910-914 that waives some requirement in general, it is an "amendment" that benefits a single permit applicant and literally no other permit applicant – an amendment that inserted "SEG" and the Consolidated Permit as an exception to literally all requirements of 12 V.I.C. §§ 910-914.

60. Moreover, the V.I. Supreme Court explicitly ruled that:

> Even if this Court were to assume - without deciding - that this procedure differs from that set forth in the CZM Act, the passage of the CZM Act by an earlier legislature could not deprive the 33rd Legislature and Governor Bryan of their constitutional authority to change that law in the manner provided for in the Revised Organic Act. Whatever the merits of SCB's claims under the law as it existed at the

time it filed its complaint, the subsequent enactment of Act No. 8407 rendered those claims moot.

61. In other words, the V.I. Supreme Court ruled that the V.I. Legislature and Governor have the power to enact a law that not only grants special benefits to only SEG but also repeals statutory provisions granting appeal rights for litigants such as MCVIC, thereby stripping such litigants of their right to a judicial determination of the legality of Government action and require compliance with the established statutory framework in their pending litigation. Thus, the Virgin Islands Government granted a special boon to itself and to SEG by retroactively eliminating plaintiff's appeal (while not doing so to anyone challenging non-SEG permit applications.)

62. Specifically, the V.I. Supreme Court ruled that pending litigation against the Government and SEG challenging this permit must be dismissed as moot because the Legislature and Governor decided that SEG – and only SEG – does not need to comply with the thorough statutory framework for coastal zone permits that Plaintiff and other litigants are currently arguing were violated in pending litigation before the Superior Court pursuant to the existing statutory appeal process.

63. For instance, Plaintiff will not benefit from the Act in its own CZM permit application process for a Coral Bay marina.

64. Plaintiff will not be excused from obtaining a CZM recommendation for permit approval or obtaining an approval of same from the Governor or obtaining a ratification from the Legislature pursuant to the Act because only SEG benefits from the Act.

65. After the V.I. Supreme Court's decision, SEG filed a copy with the Superior Court requesting that the petition for writ of review, which had been timely filed pursuant to 12 V.I.C. § 913(d), be dismissed summarily as well as a similar request directed to at least one other litigant's case challenging the permits.

66. The Superior Court has scheduled both cases for a hearing on SEG's request for summary dismissal on June 8, 2022, at 11 a.m. It is anticipated that there is a good chance the Superior Court, after the deadline for appeal of the Supreme Court opinion has expired, will issue a decision summarily dismissing both cases as "moot."

**Violations of Plaintiff's Rights Under the Constitution and Revised Organic Act**

67. The Act as interpreted and defined by the V.I. Supreme Court constitutes a violation of Plaintiff's due process rights as it bypassed ongoing and pending litigation and a statutory appeal process that was pending in the Superior Court regarding SEG's permit to instantly grant SEG a permit.

68. The Act as interpreted and defined by the V.I. Supreme Court constitutes a violation of Plaintiff's equal protection rights as it grants to SEG a special immunity to the statutory appeal process for CZM permits that no other applicant for a CZM permit receives under the CZM Act and actively results in the dismissal of any pending court challenges to that permit.

69. The Act as interpreted and defined by the V.I. Supreme Court constitutes a violation of the prohibition of laws abridging Plaintiff's right to petition the government for the redress of grievances as the V.I. Supreme Court has interpreted the Act as literally rendering moot

    all pending litigation challenging SEG's permit by effectively ruling that the Act created a permit that was completely disconnected from the CZM Act as a matter of law.

70. The Act as interpreted and defined by the V.I. Supreme Court is also a violation of the separation of powers as the Legislature divested the judiciary of its role in determining whether the CZM Act was violated in pending litigation by summarily – via a Legislative enactment – determining that SEG did not have to satisfy the requirements of the CZM Act and any pending litigation challenging whether SEG satisfied the CZM Act was therefore moot and meritless.

71. As the V.I. Supreme Court ruled (as it failed to consider the merits of SCB's claims), "[w]hatever the merits of SCB's claims under the law as it existed at the time it filed its complaint, the subsequent enactment of Act No. 8407 rendered those claims moot." *SCB v. Bryan*, Pages 8-9.

**Violation of the Public Trust Doctrine**

72. Generally, the obligation of governments to steward the shared property of all citizens has become known as the "Public Trust Doctrine."

73. "[T]he core of the public trust doctrine is the state's authority as sovereign to exercise a continuous supervision and control over the navigable waters of the state and the lands underlying those waters." *Nat'l Audubon Soc'y v. Superior Ct.*, 33 Cal. 3d 419, 425, 658 P.2d 709, 712 (1983).

74. While the Public Trust Doctrine is generally considered a common law doctrine, as applied to the submerged lands of the Virgin Islands, the doctrine is statutorily applied by federal statute. 48 U.S.C. § 1705.

75. The submerged lands of the Virgin Islands are owned by the Government of the Virgin Islands but must "be administered in trust for the people thereof." 48 U.S.C. § 1705.

76. The legislature of the Virgin Islands has recognized the obligation under 48 U.S.C. § 1705. *See* 12 V.I.C. § 903(a)(3) ("title to certain submerged and filled lands surrounding the United States Virgin Islands has been conveyed in trust to and is held in trust by the Government of the United States Virgin Islands for the benefit of the people of the United States Virgin Islands").

77. As trustee of the submerged lands of the Virgin Islands, the Government of the Virgin Islands owes a fiduciary or special duty to the people of the Virgin Islands to properly steward those lands.

78. The duties owed by the Government of the Virgin Islands under the Public Trust Doctrine include the duty to prevent waste of the property, to use reasonable skill and care to preserve the trust property and to maintain the trust assets.

79. Consistent with those special duties, the Legislature of the Virgin Islands adopted the Coastal Zone Management Act, which codified specific procedures designed to ensure that the submerged lands of the Virgin Islands were managed and used for the benefit of the people of the Virgin Islands.

80. The duties under the Public Trust Doctrine extend to both governmental agencies and the judiciary. *Nat'l Audubon Soc'y v. Superior Ct.*, 33 Cal. 3d 419, 426, 658 P.2d 709, 712 (1983).

81. The Governor's illegal modification of the consolidated permit; the Legislature's ratification of the consolidated permit as modified by the Government; and the Virgin Islands Supreme Court's ruling in *SCB v. Bryan* all violate the Public Trust Doctrine in as much as they set aside the safeguards and protections of the Coastal Zone Management Act, which were designed to fulfill the government's role as trustee of the trust lands, and instead arbitrarily and capriciously approved the consolidated permit without any consideration of the consequences of the permitted activity to the submerged lands of the Virgin Islands.

82. The following issues, including environmental issues, were sidestepped by the V.I. Supreme Court's ruling that the permit simply came into existence via Act 8407 without regard to the requirements of the CZM Act:

    The modifications requested by SEG and authorized by the Governor included the following:

    - Removal of Parcels 13A and 13B from the permit. APPX–66 (Governor's modification letter).

    - Additional cisterns were authorized to be built on the Remainder of Parcel 13 "to maintain the necessary water supply." Id.

    - Relocation of a generator from Parcel 13A to Parcel 10-41. Id.

- Construction of a "shoreline boardwalk", thereby authorizing previously unauthorized occupancy of submerged lands of the Territory without any environmental review and without changing the lease payments calculated for the submerged land permit in 2014. Id.

- Critically, and conveniently omitted from any description of the modification, the removal of Parcels 13A and 13B eliminated a key environmental feature that SEG had designed as a means of mitigating the overall impact of its development: The shunting of runoff from a major portion of the Coral Bay watershed into a catchment basin designed to capture silt and other pollutants before they reached Coral Bay. APPX–31 (FAC, ¶20). The design used a portion of Parcel 13A for the drainage ghut from the watershed into the catchment basin. The modification eliminated this mitigation feature and therefore substantially altered the scope of the project in a manner that was harmful to the environment. Id.

- The Governor's unilateral decision to allow the construction of cisterns on Rem. Parcel 13 was done without any environmental review and without any assessment of the impact of constructing the cisterns on that parcel. Nothing in the plans incorporated in the consolidated permit authorized the construction of such cisterns on that parcel. APPX–32 (FAC, ¶21). Morever, the Governor's modification authorized the construction of a "shoreline boardwalk" even though there were no plans for this boardwalk incorporated in the consolidated permit. Further, the Governor authorized at

- least part of the boardwalk to be constructed upon the submerged lands of the Virgin Islands. APPX–32 (FAC, ¶¶22–24).

- Despite the fact that the consolidated permit, as modified, now allowed for additional occupancy on submerged lands, the modification made no allowance for rental fees as required by 12 V.I.C. § 911(f)(1). APPX–32 (FAC, ¶¶25–26). There was no environmental assessment done of any of the changes made through the Governor's modification. APPX–33 (FAC, ¶¶27–28).

83. Plaintiff seeks a temporary restraining order against SEG preventing SEG from taking any action pursuant to the Consolidated Permit.

84. Plaintiff seeks a preliminary injunction against SEG enjoining SEG from taking any action pursuant to the Consolidated Permit.

85. Plaintiff seeks a permanent injunction against SEG enjoining SEG from taking any action pursuant to the Consolidated Permit.

86. Plaintiff seeks a declaratory judgment finding that Act 8407, as interpreted by the V.I. Supreme Court, and the permit issued pursuant to Act 8407 are void as a violation of Plaintiff's due process and equal protection rights, a violation of the prohibition of laws abridging Plaintiff's right to petition the government for the redress of grievances, a violation of the separation of powers, and a violation of the Public Trust Doctrine.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant, finding that Act 8407, as interpreted by the V.I. Supreme Court, and the permit

issued pursuant to Act 8407 must be declared void and SEG must be enjoined from taking any action pursuant to the permit granted via Act 8407.

Dated: October 11, 2022,  Respectfully submitted,

/s/ Mark D. Hodge, Esq.
HODGE AND HODGE
By: Mark D. Hodge (VI Bar 825)
1340 Taarneberg, St. Thomas, VI  00802
(340)774-6845
*Counsel for Plaintiff*
mark@hodgelawvi.com