### IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| THE MORAVIAN CHURCH VIRGIN ISLANDS CONFERENCE a/k/a MORAVIAN CHURCH CONFERENCE OF THE VIRGIN ISLANDS, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:22-cv-0062 |
| v. | ) ) | |
| THE SUMMERS END GROUP, LLC, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| GOVERNMENT OF THE VIRGIN ISLANDS, | ) ) | |
| Nominal Defendant. | ) ) | |

**APPEARANCES:**

MARK D. HODGE, ESQ.
HODGE & HODGE
ST. THOMAS, U.S. VIRGIN ISLANDS
    FOR PLAINTIFF THE MORAVIAN CHURCH VIRGIN ISLANDS CONFERENCE, A.K.A. MORAVIAN CONFERENCE OF THE VIRGIN ISLANDS.

JOHN H. BENHAM, III, ESQ.
BOYD L. SPREHN, ESQ.
LAW OFFICES OF JOHN H. BENHAM
ST. THOMAS, U.S. VIRGIN ISLANDS
    FOR DEFENDANT THE SUMMERS END GROUP, LLC.

CHRISTOPHER M. TIMMONS, ESQ.
VIRGIN ISLANDS DEPARTMENT OF JUSTICE
ST. CROIX, U.S. VIRGIN ISLANDS
    FOR NOMINAL DEFENDANT GOVERNMENT OF THE VIRGIN ISLANDS.

### MEMORANDUM OPINION

**Robert A. Molloy, Chief Judge.**

**BEFORE THE COURT** is Defendant The Summers End Group, LLC's ("SEG") Motion for Summary Judgment filed on May 3, 2024, (ECF No. 39.) Plaintiff The Moravian Church Virgin Islands Conference a/k/a Moravian Church Conference of the Virgin Islands ("Plaintiff") filed its opposition on May 20, 2024, (ECF No. 51), and SEG replied on June 3, 2024, (ECF No. 55.) Also, before the Court is Plaintiff's Motion for Summary Judgment, filed on May 3, 2024, (ECF No. 42.) SEG filed its response on May 20, 2024, (ECF No. 54), and Plaintiff replied, (ECF No. 57), on June 3, 2024. In addition, Nominal Defendant Government of the Virgin Islands ("GVI") filed a Motion for Joinder on May 20, 2024, seeking to join in all of the arguments submitted by SEG. (ECF No. 52.) The Court held oral argument on January 22, 2025. For the reasons stated herein, the Court will dismiss the complaint for lack of standing.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Because the parties are intimately familiar with the underlying facts of this case, the Court will recite only those facts necessary for a disposition of the instant motions.

This dispute arises from the granting of a Coastal Zone Management (CZM) permit. Plaintiff owns property "in the vicinity of the premises" in Coral Bay on St. John, U.S. Virgin Islands, where Defendant SEG plans to develop, construct and operate a marina. (ECF No. 1.) Plaintiff challenges the process by which the permit for the marina was created and granted to SEG. Plaintiff, as well as others, have opposed the proposed marina development, which has been the subject of much litigation. *See*, *e.g.*, *V.I. Conservation Society, Inc. v. V.I. Board of Land Use Appeals*, Case No. ST-2016-CV-00395 (V.I. Super. Ct), consolidated with *Moravian Church Conf. of the V.I. v. St. John Coastal Zone Management Comm.*, Case No. ST-2016-CV-

*The Moravian Church Virgin Islands Conference v. The Summers End Group, LLC*
Case No. 3:22-cv-0062
Memorandum Opinion
Page 3 of 21

00428 (V.I. Super. Ct.); *Save Coral Bay v. Bryan*, ST-2020-CV-00298 (V.I. Super. Ct.); *Save Coral Bay, Inc. v. Bryan*, 76 V.I. 505 (2022).

### A. Coastal Zone Management

The United States Coastal Zone Management Act, 16 U.S.C. §§ 1451-1461, aims to preserve, protect, and restore the nation's coast, in part by encouraging and assisting states in the development of coastal zone management programs. 16 U.S.C. § 1452(1), (2). In 1978, the U.S. Virgin Islands enacted its own Coastal Zone Management Act ("VI CZM Act"), and the Coastal Zone Management Commission ("CZMC") was designated as the territorial coastal zone management agency for the purposes of exercising powers set forth in the United States Coastal Zone Management Act. 12 V.I.C. §§ 901 *et. seq*.

Plaintiff maintains that it "has been attempting to apply for and obtain a permit to construct a marina in Coral Bay for many years." (ECF No. 1 ¶2.) On April 14, 2014, SEG applied for a Coastal Zone Management ("CZM") land permit to construct a new commercial marina on land adjacent to Coral Bay. (ECF No. 44 ¶1.) SEG also applied for a CZM water permit "to develop 27.5 acres of submerged land in Coral Bay to construct a 145-slip marina, a 75-vessel mooring field, a pump out station, and a fuel station seaward of the land parcels." *Id.* at ¶2. On August 20, 2014, CZMC's St. John Committee conducted public hearings for both of SEG's permit applications, during which, Plaintiff's representatives expressed opposition to both applications. *Id.* at ¶3. Nevertheless, on October 24, 2014, CZMC recommended to the Virgin Islands Board of Land Use that both of SEG's permits be approved. (ECF No. 1 ¶12.)

### B. Board of Land Use Appeals (BLUA) and Pending Writ of Review

On November 24, 2014, Plaintiff appealed CZMC's decision to the Board of Land Use Appeals ("BLUA"). (ECF No. 44 ¶5.) BLUA affirmed CZMC's decision on June 6, 2016, and consolidated the two permits into one permit. *Id.* at ¶6. Plaintiff then filed a petition for writ of review with the Superior Court on July 20, 2016. *Id.* at ¶8. As of the date of this Order, the matter remains pending before the Superior Court. *Id.* at ¶9.[1]

### C. Ratification of CZM Permit

On March 27, 2019, the Chair of the CZMC St. John Committee forwarded only the water permit to the Governor of the Virgin Islands, "without a vote of approval from or any other involvement by the St. John CZMC Committee." (ECF No. 41 at 2; ECF No. 44 ¶11.) The Governor approved the water permit, but "the Legislature did not immediately take action to ratify it as required by the CZM Act."[2] In the meantime, while the approved permit was being considered by the Legislature, SEG wrote a letter to the Governor, dated December 3, 2019, indicating that the BLUA had ordered the water and land permits consolidated into a single permit, and requested that he modify the water permit to reflect this. In addition, SEG requested that the Governor further modify the permit to reflect changes that had been made to the proposed project in the intervening years, including the removal of two of the seven parcels, a reduction of parking spaces, the removal of a 56-seat restaurant and one mega yacht slip, and the inclusion of a shoreline boardwalk. (ECF No. 44-3; ECF 41 at 2; ECF No. 44 ¶14.) Before the Governor acted on SEG's request for modification, the Legislature, through its Senate President, sent the Governor a letter on December 10, 2019, "returning the permit"

---

[1] *See Moravian Church Conf. of the V.I. v. St. John Coastal Zone Management Comm.*, Case No. ST-2016-CV-00428 (V.I. Super. Ct.); ECF No. 44 ¶9.

[2] *See* 12 V.I.C. § 911(e).

because it was "improperly before the Legislature" since it had not been "approved by the St.

John Committee of the Virgin Islands Coastal Zone Management Commission. . . . Rather, on

March 27, 2019, the permit was modified and issued unilaterally by the Chairman of the St.

John Committee without a vote of approval or any other involvement of the St. John

Committee." (ECF No. 44-2.) According to the Legislature, the permit was not valid because

the Committee had not voted on it and because "the project described and approved in 2014

is no longer the project the applicant intends to develop today." (ECF No. 44-2; ECF No. 41 at

3.) Nevertheless, in his letter, the Senate President assured the Governor that the Legislature

would "act promptly" once "a new, valid, consolidated land and water permit for the marina

project is transmitted for the Legislature's ratification."( ECF 44-2 at 2; ECF No. 41 at 3.)

The CZMC Chairman and representatives of SEG subsequently signed a consolidated

permit on December 16, 2019, which was then submitted to the Governor the following day.

(ECF No. 44 ¶23. ) On December 18, 2019, the Governor signed the consolidated permit (the

"2019 Permit Application"), and also signed a letter to SEG approving modifications to the

2019 Permit Application (the "2019 Modification Letter"). *Id.* at ¶¶23-24. The Governor sent

the 2019 Permit Application and a copy of his 2019 Modification Letter to the President of

the Legislature seeking ratification of the 2019 Permit Application as modified by the 2019

Modification Letter. *Id.* at ¶25. The Legislature received the Application and Modification

Letter the same day they were sent by the Governor—December 18, 2019. *Id.* The Legislature

then ratified the 2019 Permit Application and 2019 Modification Letter in December 2020,

via Bill No. 33-0428. An accompanying drafter's note to the Bill dated October 14, 2020, had

indicated that the bill was "not approved for legal sufficiency" for "numerous procedural and

Constitutional reasons."[3] (ECF No. 44-7; ECF No. 44 ¶26.) Plaintiff contends that the Consolidated Permit ratified in 2019 did not include special conditions, restrictions, or modifications "that had been imposed by BLUA's decision affirming CZMC's approval of the original land and water permits." (ECF No. 44 ¶30.)

### D. Act 8407 and the V.I. Supreme Court

In an entirely separate action initiated on July 21, 2020—before ratification of SEG's permit—Save Coral Bay, Inc. ("SCB") sued the Governor and SEG in the Superior Court of the Virgin Islands alleging that the Governor improperly approved the CZM permit(s). It sought to enjoin SEG from taking any action under them. (ECF No. 1 ¶ 50.) SCB argued that the Legislature could not ratify an action by the Governor that is contrary to statute; however, the Legislature moved forward with ratifying the consolidated permit while SCB's case was still pending before the Superior Court, and Act 8407 was soon after signed into law on December 13, 2020. The Act granted SEG a consolidated permit to develop the harbor at Coral Bay and build the marina. As a result, on May 12, 2021, the Superior Court dismissed SCB's action on the grounds that the Legislature's ratification of the consolidated permit had rendered SCB's complaint moot. *Id.* at ¶ 53.

SCB then appealed to the Supreme Court of the Virgin Islands arguing that the Superior Court had erred because the Governor lacked statutory authority to modify SEG's

---

[3] The Drafter's Note stated: "At the time the consolidated permit was modified, having been issued only on December 16, 2019, and not having been ratified by the Legislature, it did not exist, and consequently could not have been modified according to the requirements of 12 V.I.C. § 911 (g). The Legislature cannot ratify a thing that did not exist at the time the action was taken. The Governor signed a letter modifying the permit on the same date he signed the permit, December 18, 2019. To be effective, the permit must have been ratified by the Legislature pursuant to 12 V.I.C. § 911 (e), before the Governor could have modified it under section 911(g)." Bill No. 33-0428 Drafters Note. (ECF No. 44-7.)

permit before it had been ratified by the Legislature. In affirming the lower court, the
Supreme Court held that "the legislature could repeal or amend a law codified in the Virgin
Islands Code by enacting a law which was not codified in the Virgin Islands Code, and that it
had done just that when it enacted an act ratifying the consolidated water and land permits."[4]
*Save Coral Bay, Inc. v. Bryan*, 76 V.I. 505, 506 (2022), *cert. denied*, 143 S. Ct. 233 (2022).

### E. Present Action

On October 11, 2022, Plaintiff filed the instant action against Defendant SEG and Nominal
Defendant, GVI. (ECF No. 1 ¶1.) Plaintiff seeks injunctive and declaratory relief against SEG
to prevent it from taking any action under the CZM permit. Plaintiff challenges the Supreme
Court's interpretation of Act No. 8407, contending that the Act should be declared void. *Id.* at
¶¶ 19-20. Specifically, Plaintiff alleges that Act 8407, as interpreted by the Supreme Court,
violates Plaintiff's rights to due process and equal protection, abridges Plaintiff's right to
petition the government for the redress of grievances, violates the separation of powers
under the Constitution and the Revised Organic Act, and is a violation of the Public Trust
Doctrine under 48 U.S.C. § 1705. *Id.* at ¶ 6. Notably, both in the complaint and again reiterated
at the January 22, 2025 hearing, Plaintiff emphasized that the GVI was named as a nominal
defendant only and that Plaintiff was not seeking any relief from the GVI. *See e.g.* ECF No. 1
at 1 n.1. ("Plaintiff does not seek relief from Nominal Defendant Government of the Virgin

---

[4] The Virgin Islands Supreme Court further stated: "[T]his is not a case where Governor Bryan acted contrary
to a statute and then he or another Executive Branch entity attempted to retroactively ratify his own conduct.
Instead, this is a case where the Legislature ratified an action taken by Governor Bryan. Therefore, the proper
inquiry is not into the power of Governor Bryan or the Executive Branch, but the power of the Legislature itself
to excuse violations of the statutory law." *Save Coral Bay*, 76 V.I. at 510.

Islands."); *see also Bumberger v. Ins. Co. of N. Am.,* 952 F.2d 764, 767 (3d Cir. 1991) (opining

that a nominal defendant is generally a party that is "without a real interest in the litigation").

The parties now cross move for summary judgment pursuant to Federal Rule of Civil

Procedure 56(a).

## II.    LEGAL STANDARD

In considering a motion for summary judgment, the Court must determine whether

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue of material fact and that the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.*

The issue of material fact required to entitle a party to proceed to trial need not be

resolved conclusively in favor of the party asserting its existence; "rather, all that is required

is that sufficient evidence supporting the claimed factual dispute be shown to require a jury

or judge to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 244 (1986).

Although the movant has the initial burden of demonstrating the absence of genuine

issues of material fact, the non-movant must then establish the existence of each element on

which it bears the burden of proof. *See Watson v. Eastman Kodak Company*, 235 F.3d 851,

857-858 (3d Cir. 2000) ("A party's failure to make a showing that is 'sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial' mandates the entry of summary judgment.") (citations omitted).

Basically, "the nonmoving party must demonstrate that there exists sufficient evidence for a

reasonable jury to find for the nonmoving party on the issue for which summary judgment

is sought." *Niemann v. Rogers*, 802 F. Supp. 1154, 1157 (D. Del. 1992) (citation omitted).

Litigants cannot avert summary judgment with "speculation" or by resting on "conclusory

allegations," but rather they must present competent evidence from which a jury could

reasonably find in their favor. *Parker v. Sch. Dist. of Phila.*, 823 F. App'x 68, 70 (3d Cir. 2020).

## III.    DISCUSSION

The circumstances here are unique. Plaintiff's challenge implicates the Territory's

authority and ability to administer Act 8407—SEG's permit to build a marina. Asserting

federal question jurisdiction pursuant to 28 U.S.C. § 1331, Plaintiff seeks injunctive relief

against SEG and a declaratory judgment "finding that Act 8407, as interpreted by the

Supreme Court, and the permit issued SEG pursuant to Act 8407, are void as a violation of

Plaintiff's constitutional rights." (ECF No. 1 ¶¶ 1, 83-86.)

Plaintiff argues that "Act 8407, as interpreted by the Supreme Court, and the

Consolidated Permit granted thereby are void as a violation of Plaintiff's due process and

equal protection rights, a violation of the prohibition of laws abridging Plaintiff's right to

petition the government for the redress of grievances, a violation of the separation of powers,

and a violation of the Public Trust Doctrine and of 48 U.S.C. § 1705(a)." (ECF No. 43 at 7.)

In opposition, SEG argues that Plaintiff lacks standing because it did not allege any

injury "other than a speculative grievance that is contingent on future events." (ECF No. 41 at

8). Plaintiff's only allegation against SEG is contained in Paragraph 4 of the complaint, which

reads:

> SEG's proposed marina is substantially larger than Plaintiff's proposed marina and, if constructed as proposed, SEG's proposed marina would effectively prevent the development and/or viability of Plaintiff's proposed marina by consuming virtually all navigable water in Coral Bay in which Plaintiff's proposed marina would be constructed and/or exhausting the market for marina services in Coral Bay. ECF No. 1 ¶4.

Recognizing that, ordinarily, the provisions of the Constitution applicable to governmental

entitities do not apply to private actors, Plaintiff asserts that SEG operated as a state actor

in attaining its permit and is therefore subject to Plaintiff's Constitutional causes of action

as an agent of GVI. (ECF No. 63.)

## A. Standing

This Court has "an independent obligation" to assure itself of a plaintiff's standing.

U.S. Const. Art. 3, § 2, Cl. 1. *Lincoln Harbor Enterprises, LLC v. Hartz Mountain Indus., Inc.,* 517

F. Supp. 3d 293, 314 (D.N.J. 2021); *Wayne Land & Mineral Grp., LLC v. Del. River Basin Comm'n*,

959 F.3d 569, 574 (3d Cir. 2020). The Constitution gives federal courts the power to

adjudicate only genuine "Cases" and "Controversies," and this limitation to the judiciary's

power mandates that litigants have standing. U.S. Const. Art. III, § 2. Three elements are

required to establish this Article III standing enforcing the Constitution's case-or-

controversy requirement. They are:

> "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural or hypothetical."' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly. . . trace[able] to the challenged action of the defendant, and not. . . th[e] result [of] the independent action of some third party not

before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

*United States v. Windsor*, 570 U.S. 744, 757 (2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing [each] element"—and in the pleading stage—must "clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

> As explained by the U.S. Supreme Court:
>
> [T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative? These questions and any others relevant to the standing inquiry must be answered by reference to the Art. III notion that federal courts may exercise power only in the last resort, and as a necessity, and only when adjudication is consistent with a system of separated powers and [the dispute is one] traditionally thought to be capable of resolution through the judicial process."

*Allen v. Wright*, 468 U.S. 737, 752 (1984) (citations and internal quotation marks omitted).

## 1. Injury in Fact

"To establish an Art. III case or controversy, a litigant first must clearly demonstrate that he has suffered an 'injury in fact.' That injury. . . must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is 'distinct and palpable,' . . . as opposed to merely '[a]bstract,' . . . and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)

(citations omitted); *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 731 (7th Cir. 2020) ("To sue in federal court, a plaintiff must demonstrate an injury to her 'separate concrete interest.'").

Article III requires that the Plaintiff *personally* suffer harm. *See Schuchardt v. President of the United States,* 839 F.3d 336, 344 (3d Cir. 2016) ("A particularized Article III injury is one that affects the plaintiff in a personal and individual way.") (quotation marks, alterations, and citation omitted); *see also Lincoln Harbor Enterprises,* 517 F. Supp. at 303 ("[A] plaintiff must show not only that the defendant's activities harm [the environment], but that the plaintiff is 'directly affected' by such harm.") (citing *Lujan v. v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992)).

Plaintiff, in the instant matter, must show not only that the passage of Act 8407 and SEG's activities create harm, but that Plaintiff's claimed property interest is a legally protected interest that is "directly affected*." See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). Plaintiffs here assert a *future* injury—that "if constructed as proposed, SEG's proposed marina would effectively prevent the development and/or viability of Plaintiff's proposed marina by consuming virtually all navigable water in Coral Bay in which Plaintiff's proposed marina would be constructed. . . ." ECF No. 1 ¶4.

"An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v.*

*The Moravian Church Virgin Islands Conference v. The Summers End Group, LLC*
Case No. 3:22-cv-0062
Memorandum Opinion
Page 13 of 21

*Driehaus*, 573 U.S. 149, 158 (2014) (citing *Clapper* v. *Amnesty Int'l USA*, 568 U. S. 398, 409,

414, n. 5 (emphasis deleted and internal quotation marks omitted).

Plaintiff asserts that plans for its "own proposed marina," are threatened. However,

not only does Plaintiff lack permits for its own marina, but, based on argument at the January

22, 2025, hearing, Plaintiff does not have a permit application pending.[5] It applied for a

permit after SEG's permits had been approved by CZM and after Plaintiff appealed the

decision to BLUA. ECF No. 63 at 5, n.1. In *Maiden Creek Assocs., L.P. v. United States Dep't of*

*Transportation,* the plaintiff alleged personal harm by asserting that a proposed project

would "require condemnation to part of its [own] property and [would] prevent it from

developing the property as it had planned." *Maiden Creek Assocs., L.P. v. United States Dep't of*

*Transportation*, 123 F. Supp. 3d 638, 648 (E.D. Pa. 2015), *aff'd sub nom. Maiden Creek Assocs.,*

*L.P. v. U.S. Dep't of Transp.,* 823 F.3d 184 (3d Cir. 2016).  The court in *Maiden Creek* held that

the plaintiff's allegations of future injury were enough to establish constitutional standing.

*Id.* But unlike the instant situation, the plaintiff in *Maiden Creek* had demonstrated a concrete

interest by having submitted a proposal to develop a parcel into a commercial shopping

center for its plan. Here, Plaintiffs have not submitted a proposal for development or have a

---

[5] Plaintiff alleges that it applied for a permit, through its business partner, after SEG's permits had been approved by CZM and after Plaintiff appealed the decision to BLUA. See ECF No. 63 at 5 n.1. ("[O]n June 5, 2015, Plaintiff, through its business partner, T-Rex St. John, LLC, submitted their CZM permit application, which was forwarded to the Army Corps of Engineers on June 9, 2015. *See* Exhibit 1.  On June 29, 2015, CZM sent a letter in response identifying deficiencies in the application. *See* Exhibit 2.. However, by June 29, 2015, the BLUA had already upheld CZM's grant of a permit for SEG, which resulted in the still pending petition for writ of review.") ECF No. 63 at 5 n.1.

permit pending.[6] There is no evidence that the Plaintiff has commenced any activities for the

submission of a permit.

The uncertainty of Plaintiff's claim here is enlarged by Plaintiff's own contention that

"the actual *plan* for [SEG's] development that has now been permitted by Act 8407 is a

complete mystery. . . ." (ECF No. 43 at 14.) Plaintiff states the proposed marina is now a

"massive development in the coastal zone based upon an undisclosed development plan,

undisclosed civil drawings, and undisclosed marina construction drawings." *Id.* at 15.

Plaintiff further states:

> [W]e have no idea what the marina authorized by Act 8407 even looks like
> other than that we know it allegedly has one less slip, is in an unknown and
> undisclosed configuration consuming an undisclosed portion of Coral Bay, and
> the revisions to the land development are a complete mystery other than that
> structures were shifted to different parcels and a major feature has been
> added while major mitigation features have apparently disappeared. We are
> all instead left with nothing but the [Governor's] 2019 Modification Letter [to
> the Legislature] to guess at the dimensions, design, and environmental impact
> of SEG's undisclosed development. *Id.* at 12.

Worth noting is that although the violation of a procedural right granted by statute

can be sufficient in some circumstances to constitute injury in fact, "Article III standing

requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at

330. A plaintiff cannot, for example, "allege a bare procedural violation, divorced from any

concrete harm, and satisfy the injury-in-fact requirement of Article III of the Constitution."

---

[6] After CZMC approved SEG's permit, "Plaintiff, through its business partner, T-Rex St. John, LLC, submitted their CZM permit application, which was forwarded to the Army Corps of Engineers on June 9, 2015. *See* [ECF No. 63-1]. On June 29, 2015, CZM sent a letter in response identifying deficiencies in the application. *See* [ECF No. 63-2]." ECF No. 63 at 5 n.1. The permit application was found to be incomplete, and Plaintiff did not resubmit. "[B]y June 29, 2015, the BLUA had already upheld CZM's grant of a permit for SEG, which resulted in the still pending petition for writ of review." *Id.*

*Id. See also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation. . . is insufficient to create Article III standing."); *Allen*, 468 U.S. at 754 ("[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.") (citing *Schlesinger* v. *Reservists Committee to Stop the War*, 418 U.S. 208 (1974)).

The Court recognizes that Plaintiff's challenge to approval of the original permits submitted by SEG remains pending before the Superior Court in the form of a writ of review. However, the Court is not persuaded that Plaintiff's claim of a personal "threatened injury" is "certainly impending." Given that Plaintiff's speculative prediction of injury is based on a hypothetical conjecture at this point, the Court finds Plaintiff fails to demonstrate the concrete and particularized "invasion of a legally protected interest," that satisfies the injury-in-fact element of standing.

## 2. Causation and Redressability

In addition to injury in fact, a plaintiff must satisfy the "causation" and "redressability" prongs of the Article III standing requirements by showing that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 41 (1976); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 466 (1982) ("[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant'") (citation omitted).

Plaintiff's assertions do not entail a degree of risk sufficient to meet the concreteness requirement for establishing injury in fact for its claims, and they do not survive the second and third prongs of the test—causation and redressability. Plaintiff does not present "putatively illegal conduct" by SEG. It expresses dissatisfaction with SEG's "boon," in receiving its permit, but Plaintiff fails to demonstrate any injury caused by SEG's conduct. Furthermore, GVI is a nominal defendant in this matter and a nominal defendant is generally a party that is "without a real interest in the litigation." *Bumberger,* 952 F.2d at 767. The Court reiterates that Plaintiff maintained at the evidentiary hearing that it was not seeking relief from GVI.

## B. Constitutional Causes of Action

In addition to alleged injury based on prospective building plans, Plaintiff alleges injury from the following asserted violations of "Constitutional rights and rights under the Revised Organic Act":

1. Violation of due process rights because Act 8407 "bypassed ongoing and pending litigation and a statutory appeal process that was pending in the Superior Court regarding SEG's permit to instantly grant SEG a permit. ECF No. 1 ¶67;

2. Violation of equal protection rights because Act 8407 "grants to SEG a special immunity to the statutory appeal process for CZM permits that no other applicant for a CZM permit receives under the CZM Act and actively results in the dismissal of any pending court challenges to that permit." *Id.* at ¶68;

3. Injury caused by a violation of "prohibition of laws abridging Plaintiff's right to petition the government for the redress of grievances" because "the V.I. Supreme Court has interpreted the Act as literally rendering moot all pending litigation challenging SEG's permit by effectively ruling that the Act created a permit that was completely disconnected from the CZM Act as a matter of law." *Id.* at ¶69;

4. Violation of the separation of powers "guaranteed by the United States Constitution as applied to the United States Virgin Islands by the Revised Organic Act of 1954" because "the Legislature divested the judiciary of its role in

determining whether the CZM Act was violated in pending litigation by summarily —via a Legislative enactment—determining that SEG did not have to satisfy the requirements of the CZM Act and any pending litigation challenging whether SEG satisfied the CZM Act was therefore moot and meritless." *Id.* at ¶70. [7]; and

5. Violation of Public Trust Doctrine because SEG's consolidated permit was "arbitrarily and capriciously approved" setting aside "the safeguards and protections of the Coastal Zone Management Act, which were designed to fulfill the government's role as trustee of the trust lands," and doing so without "consideration of the consequences of the permitted activity to the submerged lands of the Virgin Islands." *Id.* at ¶81.

Plaintiffs' claims against SEG necessarily fail because "[c]onstitutional claims are generally only cognizable when the government is responsible for the specific conduct giving rise to a claim." *Williams v. Sorg*, No. 22-4036, 2023 U.S. Dist. LEXIS 64749, at *5 (E.D. Pa. Apr. 13, 2023) (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141-42 (3d Cir. 1995)). As a private entity, SEG is not subject to the Constitutional, statutory, and common law duties applicable to a government entity.

Notwithstanding that SEG is a private entity, Plaintiff argues that SEG's involvement in the enactment of Act 8407 renders SEG a "state agent" for purposes of Plaintiff's constitutional causes of action.[8] (ECF No. 63 at 1, 6, 7.) According to Plaintiff, SEG is bound by the same Constitutional, statutory, and common law restrictions that bind Nominal Defendant Government of the Virgin Islands, and if SEG proceeds with the development and

---

[7] In *Save Coral Bay, Inc. v. Bryan*, 76 V.I. 505, 512 (2022), the Virgin Islands Supreme Court ruled that "[w]hatever the merits of SCB's claims under the law as it existed at the time it filed its complaint, the subsequent enactment of Act No. 8407 rendered those claims moot." *Id. at* 8-9; *see* ECF No. 1 ¶71.

[8] Plaintiff submitted a supplemental brief providing caselaw to support its argument—presented for the first time at the January 22, 2025, evidentiary hearing—that SEG's involvement with the granting of its permit should be construed as state action.

*The Moravian Church Virgin Islands Conference v. The Summers End Group, LLC*
Case No. 3:22-cv-0062
Memorandum Opinion
Page 18 of 21

construction of the marina under Act 8407, it does so as an "agent of the Government." ECF No. 63 at 1.

Plaintiff invokes "agency theory" but does not employ agency law in its argument. Instead, Plaintiff applies the state-action doctrine where a private entity may be considered a state actor when it exercises a function "traditionally exclusively reserved to the State." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804, (2019) (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974)).

Plaintiff contends that Act 8407—as interpreted by the Virgin Islands Supreme Court—bypasses both CZMC and the CZM Act and therefore "sidesteps" the statutory process and directly grants SEG a permit "to develop GVI's submerged lands." (ECF No. 63 at 6, 8.) Plaintiff argues that GVI "effectively delegates" its "exclusive" and "sovereign" duty to administer the submerged lands to SEG thereby rendering SEG subject "to the same restrictions applicable to GVI." *Id.* at 6, 8-10.[9] The Court finds this argument meritless.

In support of its argument, Plaintiff alludes to "direct discussions and negotiations" and coordination between SEG and GVI to "enact an unconstitutional law," and the potential "pecuniary benefit" afforded GVI since "improvements will be made to land that is owned by GVI," and those improvements will immediately revert to GVI after 20 years, "unless GVI, at its sole discretion chooses to grant a renewal or extension." *Id.* at 1, 8.

---

[9] Plaintiff argues that the "US CZM Act and NEPA require GVI to establish a system to comply with those requirements established by 48 U.S.C. § 1705(a)," and that GVI failed to follow established statutory requirements by enacting Act 8407. (ECF No. 63 at 8.) Plaintiff contends that GVI "crafted and enacted the VI CZM Act. However, the permit created by Act 8407, as interpreted by the VI Supreme Court, is not a product of the VI CZM Act and is not bound by any provisions of the VI CZM Act that conflict with the Act 8407 permit. GVI was not free to simply disregard the requirements of 48 U.S.C. § 1705(a) and the US CZM Act. It was a sovereign duty delegated to GVI by the U.S. Government." *Id.*

The Court is not persuaded. "Whether a defendant is a state actor. . . depends on whether there is such a 'close nexus between the State and the challenged action' that seemingly private behavior may be 'fairly treated as that of the State itself.'" *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (quoting *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351 (1974).

Plaintiff provides caselaw but provides little analysis and few facts to demonstrate a "nexus" that establishes SEG as a "state agent."  There is no showing that SEG exercised any "powers that are traditionally the exclusive prerogative" of GVI, or "acted in concert" with GVI officials, or "insinuated itself into a position of interdependence" with GVI  to render it a state actor.  *See Rufo v. Fox*, No. 21-2861, 2021 U.S. Dist. LEXIS 222633, at *19-20 (E.D. Pa. Nov. 18, 2021) ("[Courts consider] whether: (1) a party exercised powers that are traditionally the exclusive prerogative of the state; (2) it acted with the help of or in concert with state officials; and (3) the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." ) (citations omitted).

Plaintiff essentially alleges that SEG and GVI engaged in a conspiracy that resulted in violations of Plaintiff's Constitutional rights. "But a conspiracy requires an agreement, and to allege an agreement, the plaintiff must allege facts that plausibly suggest a meeting of the minds." *Forrest Hill Cmty. Ass'n v. Pub. Servs.*, 2022 U.S. Dist. LEXIS 150036, at *20-21 (D.N.J. Aug. 21, 2022) (citations and internal quotation marks omitted); *see, e.g., Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir. 1989) ("To plead conspiracy adequately, a

plaintiff must set forth . . . the certain actions of the alleged conspirators taken to achieve that purpose.").

The Governor of the Virgin Islands has statutory authority to make modifications to permits. *See* 12 V.I.C. § 911(g). And private entities seeking permits obviously must coordinate with Government officials to successfully navigate the permitting process. Cooperation does not "render SEG and GVI so intertwined that state involvement is established binding SEG to the same restrictions applicable to GVI." (ECF No. 63 at 7.) The Court acknowledges that there may be mutual benefit to SEG and GVI as a result of Act 8407, however, that is not enough to render SEG a state actor under the state action doctrine. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010) (finding fatal to the claim the failure to make any factual contentions concerning defendants' conduct).

The Court concludes that Plaintiff does not provide sufficient evidence from which a neutral factfinder could deduce that defendants engaged in a conspiracy to violate Plaintiff's constitutional rights. Furthermore, the Court finds that Plaintiff does not demonstrate a genuine dispute as to any material fact concerning the relationship between SEG and GVI such that SEG is rendered a state actor. Because Plaintiff has not alleged any facts from which the Court could plausibly infer that SEG was a state actor in the process of attaining its permit through the enactment of Act 8407, the Court must grant SEG's motion to dismiss Plaintiff's Constitutional claims against it.

*The Moravian Church Virgin Islands Conference v. The Summers End Group, LLC*
Case No. 3:22-cv-0062
Memorandum Opinion
Page 21 of 21

## IV.    CONCLUSION

The Court finds no genuine issue of material fact concerning standing here. None of Plaintiff's claims suffice to support standing because first, there is no judicially cognizable injury, and second, the alleged injuries are not fairly traceable to unlawful conduct of SEG. Plaintiff asserts the possibility, unsubstantiated by allegations of fact, that its situation might be better if Act 8407—as interpreted by the Virgin Islands Supreme Court—had not been passed into law, and that it might improve were the court to afford relief. But in order to warrant relief, "the litigant must clearly and specifically set forth facts sufficient to satisfy [the] Art. III standing requirements. A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 289 (3d Cir. 2008) (citing *Whitmore,* 495 U.S. at 155-56).

Because the Court finds that it lacks subject matter jurisdiction based on standing, the Court will grant SEG's motion for summary judgment. Accordingly, Plaintiff's request for summary judgment, ECF No. 42, will be denied, and its Complaint, ECF No. 1, will be dismissed without prejudice. Nominal Defendant GVI's Motion for Joinder, ECF No. 52, is granted.

An appropriate Order follows.

**Dated:** March 28, 2025                    /s/ *Robert A. Molloy*
                                   **ROBERT A. MOLLOY**
                                    **Chief Judge**